2003 VT 43

**Cheryl L'Esperance, Matthew and Kyle L'Esperance, Scott and Daryl Simpson v. Wayne Benware and Sandra Lebo**

[830 A.2d 675]

No. 01-404

Present: **Amestoy, C.J., Dooley, Morse,[1] Johnson and Skoglund, JJ.**

Opinion Filed May 2, 2003

---

[1] Justice Morse sat for oral argument but did not participate in this decision.

*Mary C. Welford* of *Witten Woolmington Bongartz Campbell & Boepple, P.C.*, Manchester Center, for Plaintiffs-Appellees.

*William J. Blake* of *Kiel Ellis & Boxer*, Springfield, for Defendants-Appellants.

*John J. McCullough* and *Stephen Norman, Vermont Legal Aid, Inc.*, Montpelier, for Amicus Curiae Vermont Tenants, Inc./CVOEO.

¶ 1. **Amestoy, C.J.** In this appeal of a jury verdict awarding damages to plaintiff-tenants, defendant-landlord claims (1) the evidence was insufficient to support the jury's finding that landlord was negligent in failing to provide plaintiff-tenants with safe drinking water; (2) the trial court erred in concluding that landlord was liable to plaintiff-tenants under the Consumer Fraud Act for renting her property in violation of the

law; (3) the jury's award of exemplary damages was erroneous because it was unsupported by the evidence; and (4) the trial court erred in awarding attorney's fees to plaintiffs. We affirm.

¶ 2. In February 1996, plaintiff-tenants, Cheryl L'Esperance and her four children, Matthew L'Esperance, Kyle L'Esperance, Scott Simpson II, and Daryl Simpson began renting a house in Shrewsbury, Vermont from the owner, Eva Benware Kinney.[2] Plaintiffs claim they encountered a number of problems with the property. They allege that the heat was inadequate, the water was not working properly, the foundation appeared to be deteriorating, and the heat and electric bills were extraordinarily high. In March 1996, plaintiffs became ill with cramping, diarrhea, and vomiting. At the advice of her doctor, Cheryl L'Esperance contacted the Shrewsbury town health officer to have the water tested for contamination.

¶ 3. In April, the town health officer sent a water sample taken from the house to the Vermont Department of Health laboratory. The sample was found to contain E. coli bacteria. The town health officer requested the Vermont Department of Labor and Industry to inspect the property. On April 26, 1996, a Department inspector did so and ordered that the house be vacated by April 29 due to electrical problems and structural deficiencies, including an unsound foundation, a cracked and unsupported carrier beam, and the potential failure of a support column. Cheryl L'Esperance moved into a motel with her children until they could find other housing. In early May 1996, plaintiffs were treated for giardiasis.

¶ 4. In July 1998, plaintiffs filed a complaint against landlord alleging: (1) violation of the rental housing health code; (2) breach of express and implied warranties of habitability; (3) consumer fraud; (4) breach of the covenant of quiet enjoyment; (5) intentional infliction of emotional distress; (6) common law fraud; (7) failure to return a security deposit; and (8) negligence. Prior to trial, the court granted summary judgment for landlord on the rental housing health code and warranty of habitability claims. The court granted summary judgment for plaintiffs on the claims of landlord's liability for violation of the Consumer Fraud Act and for failure to return a security deposit, but left for trial the issue of damages on each claim. Before trial, plaintiffs voluntarily dismissed their claims for breach of the covenant of quiet enjoyment, intentional infliction of emotional distress, and common law fraud.

---

[2] Defendant-landlord, Mrs. Kinney, died while this action was pending, and the co-executors of her estate, Wayne Benware and Sandra Lebo, were substituted by court order as defendants. For clarity, this opinion uses "landlord" when referring to defendants.

¶ 5. The remaining claims regarding negligence, and damages for consumer fraud and failure to return a security deposit, were tried before a jury in June 2001. The jury found landlord negligent, and awarded plaintiffs a total of $5000 in compensatory damages. With respect to the consumer fraud claim, the jury awarded plaintiffs $1200 in compensatory damages and $3600 in exemplary damages. The jury found that the value of the security deposit was $400, but declined to award any damages for willfully withholding the deposit.

¶ 6. Landlord filed post-trial motions requesting the court to grant judgment notwithstanding the verdict pursuant to V.R.C.P. 50(b) or to grant a new trial or to alter or amend judgment pursuant to V.R.C.P. 59. The court denied these motions. Following the court's denial of landlord's motions, the court held a hearing on plaintiffs' petition for attorney's fees, costs and interest. On September 28, 2001, the court awarded plaintiffs $33,315.69 in attorney's fees, costs, and prejudgment interest. A final judgment order of $43,736.69, based on the jury's verdict, post-judgment attorney's fees, and the court's September 28 award, was entered on October 23, 2001.

¶ 7. On appeal, landlord asserts: (1) that the jury verdict on plaintiffs' negligence claim is not supported by the evidence and the trial court committed reversible error in denying landlord a judgment notwithstanding the verdict or alternatively granting landlord a new trial; (2) that the trial court committed reversible error by granting judgment in favor of plaintiffs on liability under the Consumer Fraud Act instead of submitting the issue to the jury; (3) that the jury verdict on exemplary damages under the Consumer Fraud Act was unsupported by the evidence; and (4) that the trial court erred in awarding attorney's fees to plaintiffs because plaintiffs' entitlement to the fees is limited to the consumer fraud claim and the trial court failed to reduce the fee award based on plaintiffs' "limited success" in the case. We address each argument in turn.

## I. Negligence Claim

¶ 8. Landlord's assertion of error with respect to plaintiffs' negligence claim is predicated on the argument that — even viewing evidence in the light most favorable to plaintiffs — there was insufficient evidence to fairly and reasonably support a jury verdict that landlord had breached her duty to provide a safe and potable water supply and that the breach was the proximate cause of the injuries suffered by plaintiffs. We disagree.

¶ 9. On appeal, we must determine whether the "result reached by the jury is sound in law on the evidence produced." *Murphy v. Stowe Club Highlands*, 171 Vt. 144, 154, 761 A.2d 688, 696 (2000). Viewing the evidence in the light most favorable to the nonmoving party, and excluding the effects of any modifying evidence, this Court will affirm the denial of a motion for judgment as a matter of law "if any evidence fairly or reasonably supports" the nonmoving party's claim. *Haynes v. Golub Corp.*, 166 Vt. 228, 233, 692 A.2d 377, 380 (1997).

¶ 10. Viewing the evidence in the light most favorable to the nonmoving party, the evidence showed that the water had been contaminated in the past and that landlord had knowledge of the possibility of contamination based on past experiences with the water supply at the property. For example, landlord's daughter, Sandra Lebo, testified that a spring across the road from the property has supplied the water to the rental unit for the entire time her family owned the property, from the mid-1950s to the present. She also said that the water had been contaminated before and that Ms. Kinney had added Clorox in an attempt to remedy the situation. Plaintiff testified as to landlord's notice of contamination problems, stating, "I recall [landlord] saying that she has had past comments from the health inspectors on what to do and she basically — basically said didn't [sic] believe them." Landlord's daughter testified that landlord never treated the water during the time that plaintiffs lived at the property. The town health officer testified that a sample of drinking water from the property showed the presence of E. coli bacteria, which the Vermont Department of Health laboratory identified as posing a serious health concern. Finally, the jury heard undisputed medical testimony that plaintiffs' sickness was related to the presence of bacteria in the drinking water.

¶ 11. Based on our review of the record, the evidence presented fairly and reasonably supported plaintiffs' claim, the jury verdict was sound, and therefore the trial court properly denied landlord's motion.

## II. Consumer Fraud Liability

¶ 12. Prior to trial, the trial court granted summary judgment to plaintiffs on their claim under the Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g. Landlord moved at trial for reconsideration of the court's summary judgment order and for judgment as a matter of law pursuant to V.R.C.P. 50. The court denied these motions and submitted the case to the jury solely for a determination of damages under the Consumer Fraud Act. Following trial, landlord filed motions for judgment as a matter of law pursuant to V.R.C.P. 50 and/or to alter or amend the judgment pursuant

to V.R.C.P. 59 and/or for a new trial. The court denied these motions. Landlord argues that the trial court committed reversible error by granting judgment in favor of plaintiffs on the consumer fraud claim and by denying landlord's post-trial motions. We disagree.

¶ 13. We review an appeal from summary judgment applying the same standard as the trial court: requiring the moving party to prove that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. V.R.C.P. 56(c); *White v. Quechee Lakes Landowners' Ass'n, Inc.*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). The nonmoving party must receive the benefit of all reasonable doubts and inferences, although contrary allegations must be "supported by specific facts sufficient to create a genuine issue of material fact." *Samplid Enters., Inc. v. First Vt. Bank*, 165 Vt. 22, 25, 676 A.2d 774, 776 (1996).

¶ 14. A landlord can commit a deceptive act prohibited by § 2453 of Title 9 when a landlord rents property to a tenant that is in violation of law. *Bisson v. Ward*, 160 Vt. 343, 351, 628 A.2d 1256, 1261 (1993). Plaintiffs argued that landlord rented the Shrewsbury property to them when it was not in compliance with health and safety codes. Plaintiffs submitted an affidavit and copies of records from the Department of Labor and Industry in support of the motion for summary judgment. This evidence submitted by plaintiffs included: (1) a fire inspection report dated October 31, 1994, denying occupancy and declaring that "[i]nspection is required prior to any occupancy"; and (2) an affidavit of Assistant Fire Marshall Fran Robillard stating that he noted the inspection requirement on the above report and sent a copy of the report to Ms. Kinney. He also stated in this affidavit that when the property was again inspected in April 1996 he found serious "structural deficiencies, electrical hazards, and other violations of the life safety code."

¶ 15. Landlord, in response, did not present to the court any specific facts or evidence contradicting the affidavit and report described above, but instead repeatedly argued that Ms. Kinney did not know the property was in violation of law. We have previously held that "[t]he absence of intent based upon a lack of knowledge or expertise is not a defense to a claim under the Act." *Carter v. Gugliuzzi*, 168 Vt. 48, 58, 716 A.2d 17, 24-25 (1998). Ms. Kinney's alleged lack of knowledge is not material to plaintiffs' claim under the Consumer Fraud Act. Based on the evidence presented at the time of the summary judgment motion, the trial court properly granted summary judgment to plaintiffs on their consumer fraud claim.

¶ 16. Additionally, we find unavailing landlord's argument that evidence introduced at trial raised a material factual dispute as to landlord's awareness of the Labor and Industry reports. In denying landlord's motion for judgment as a matter of law, the trial court properly noted that the relevant issue for purposes of establishing landlord's liability under the Consumer Fraud Act remained "whether she rented to the plaintiffs when it was in violation of the law." The trial court concluded it was still undisputed that at the time the house was rented to plaintiffs it was subject to a Department of Labor and Industry inspection report which not only denied occupancy, but also expressly stated that the property not be occupied until it was brought into compliance with all regulations and inspected again. On an appeal of denials of a motion for judgment as a matter of law, and a motion for a new trial, we view the evidence in the light most favorable to the plaintiff. *Brueckner v. Norwich Univ.*, 169 Vt. 118, 120-21, 730 A.2d 1086, 1089 (1999). The trial court did not err in concluding that landlord was liable to plaintiffs under the Consumer Fraud Act.

## III. Consumer Fraud Damages

¶ 17. Landlord asserts that the jury's award of exemplary damages under the Consumer Fraud Act was clearly erroneous because it was unsupported by the evidence. By special verdict, the jury awarded plaintiffs $1200 in compensatory damages as a result of landlord's violation of the Consumer Fraud Act, and awarded three times that amount, $3600, in exemplary damages. See 9 V.S.A. § 2461(b) ("consumer . . . may sue and recover from the . . . violator . . . exemplary damages not exceeding three times the value of the consideration given by the consumer"). We have previously noted that the statute requires an award of exemplary damages "only where malice, ill will, or wanton conduct is demonstrated." *Bruntaeger v. Zeller*, 147 Vt. 247, 252, 515 A.2d 123, 127 (1986). Landlord argues that the evidence produced at trial was insufficient, as a matter of law, to fulfill the requisite showing for exemplary damages. See, e.g., *Meadowbrook Condo. Ass'n v. S. Burlington Realty Corp.*, 152 Vt. 16, 28, 565 A.2d 238, 245 (1989) (fact that the defendant did not fulfill promise to obtain cable television service because it did not want to spend the money did not demonstrate the requisite degree of malice).

¶ 18. Malice is shown through "conduct manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of plaintiff's rights," *Crump v. P & C Food Mkts., Inc.*, 154 Vt. 284, 297, 576 A.2d 441, 449 (1990), and it may be inferred from the

surrounding circumstances and the nature of the defendant's conduct. *Ainsworth v. Franklin County Cheese Corp.*, 156 Vt. 325, 332, 592 A.2d 871, 875 (1991). Here, plaintiffs' evidence included testimony regarding a 1990 Department of Labor and Industry inspection report which ordered landlord to make repairs due to significant electrical and fire code violations at the property; a 1994 Department of Labor and Industry report informing landlord that the house was not to be occupied until further inspection; landlord's notice in the paper advertising the rental property in the summer of 1995, despite the fact that there was no evidence of any work done on the property or of further inspection; a 1996 inspection done by the Department, only two months after plaintiffs moved into the property, which revealed severe, long-standing structural and electrical deficiencies requiring the property to be vacated by plaintiffs and closed.

¶ 19. From the evidence submitted at trial, the jury could have reasonably concluded that landlord's conduct demonstrated a reckless or wanton disregard for plaintiffs' safety and rights as tenants. Thus, there was no error in submitting the issue of damages to the jury, and landlord's motions were properly denied.

## IV. Attorney's Fees

¶ 20. Landlord contends that the trial court erred in awarding attorney's fees to plaintiffs, arguing that: (1) attorney's fees were awarded under the Consumer Fraud Act and hence should not apply to attorney's time spent on alternative claims; (2) the results in this case warranted a downward departure from the initial fee, given the dismissal on several claims and the limited damages awarded on successful claims under the Consumer Fraud Act; and (3) the award of attorney's fees was unreasonable because the award produced a windfall to plaintiffs' attorney, the attorney's fees were too high, and the trial court abused its discretion by failing to consider landlord's financial hardship.

¶ 21. When determining an award of attorney's fees, the trial court must make a determination based on the specific facts of each case and, accordingly, we grant the trial court wide discretion in making that determination. *Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 251, 668 A.2d 659, 669 (1995). Generally, we apply the "American rule" requiring parties to bear their own costs of litigation unless otherwise provided by contract or statute. *DJ Painting, Inc. v. Baraw Enters., Inc.*, 172 Vt. 239, 246, 776 A.2d 413, 419 (2001). In this instance, plaintiffs seek attorney's fees under the Vermont Consumer Fraud Act. The Act

mandates that where a plaintiff has made a showing of fraud, the court will award reasonable attorney's fees. *Bisson*, 160 Vt. at 346, 628 A.2d at 1258; see 9 V.S.A. § 2461(b) (consumer may sue and recover attorney's fees). Where a court finds that the Consumer Fraud Act has been violated, it is not within the court's discretion to determine whether to award such fees, *Gramatan Home Investors Corp. v. Starling*, 143 Vt. 527, 535-36, 470 A.2d 1157, 1162 (1983), but rather its task is to determine what constitutes reasonable fees in each instance.

¶ 22.  In calculating the award of attorney's fees, the court looks to the "most useful starting point," the "lodestar figure," by determining the number of hours reasonably expended on the case multiplied by a reasonable hourly rate, and then adjusting that fee upward or downward based on various factors. See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (clarifying the proper formulation for the calculation of attorney's fees). These factors include, among others, the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation. *Id.* at 430 n.3.

¶ 23.  The trial court found, based on witness testimony, that plaintiffs' attorney spent a reasonable number of hours on the case at a reasonable fee of $135.00 per hour, and the court calculated a total lodestar figure based on these findings. The trial court then decreased that figure, subtracting two hours from the fees which plaintiffs' attorney conceded were not properly recoverable.

¶ 24.  Landlord argues on appeal that plaintiffs were entitled to recover attorney's fees only on the consumer fraud claim and not on the negligence and security deposit claims, and thus the court abused its discretion in its award of attorney's fees. The court addressed this argument in its order. In finding a common core of facts for all of plaintiffs' claims, the court explained:

> All of the claims that went to trial arose out of the consumer transaction which forms the basis of the consumer fraud claim, namely, the defendant's rental of a substandard home to the plaintiffs .... Most of the evidence presented at trial, while relevant to the negligence and security deposit claims, was also relevant to the issue of exemplary damages on the consumer fraud claim.

Thus, the court concluded that "plaintiffs' lawsuit is not one which can be viewed as a series of discrete claims so that the hours expended can be divided on a claim-by-claim basis." In the practice of law, it is quite

common to have several claims arise out of a common core of facts. See *Hensley*, 461 U.S. at 435 ("It may well be that cases involving . . . unrelated claims are unlikely to arise with great frequency."). The court did not abuse its discretion in finding that the cases involved a common core of facts.

¶ 25. Landlord also contends that the results in this case are "limited," and thus warrant a reduction in the attorney's fee award, pursuant to *Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. . . . the most critical factor is the degree of success obtained."). Landlord argues that plaintiffs' success was "limited" based on the dismissal of several claims and the amount of damages awarded on plaintiffs' claims under the Consumer Fraud Act. In *Hensley*, the United States Supreme Court instructed courts to focus on the significance of the plaintiff's overall results in relation to the hours reasonably expended on litigation in cases where the plaintiff's claims contained a common core of facts or were based on related legal theories. *Id.* at 435. Where a plaintiff has achieved excellent results, although through the use of alternative legal grounds, "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* A plaintiff's failure to receive all relief requested is not dispositive, and the application of a mathematical ratio to compare the total number of issues raised with the number plaintiff prevailed upon is similarly unhelpful to a reasonable fee determination. *Id.* at 435-36 n.11. Here, the trial court found not only that plaintiffs prevailed, but also that "they recovered the maximum amount possible under the applicable statute including exemplary damages" for the consumer fraud claim. The court noted that the malice standard for an award of exemplary damages is a difficult one to meet, and thus, plaintiffs' recovery "underscores the plaintiffs' overall success in pursuing this case." Thus, while plaintiffs did not prevail on all of their original claims, they were certainly successful in this suit arising out of a common core of facts, and the trial court acknowledged this in its determination. See *LaBrie*, 164 Vt. at 251, 668 A.2d at 669 (finding no abuse of discretion for failure to reduce award of attorney's fees where plaintiff was successful in suit even though court did not provide all relief requested).

¶ 26. Landlord also argues that the court's award of attorney's fees was unreasonable and should have been reduced because it produced a windfall to the attorney, the court failed to consider the financial hardship that the award placed upon defendants, and the attorney's fees were too high.

¶ 27. An attorney does not receive a "windfall" merely because the award of attorney's fees is not proportionate to the award of damages. See *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (rejecting proposition that fee awards should necessarily be proportionate to damages recovered). Here, plaintiffs recovered the maximum amount possible under the Consumer Fraud Act. In *Gramatan Home Investors Corp.*, we recognized that the relief available under Vermont's consumer fraud laws, including the provision for attorney's fees, "was fashioned in order to promote and encourage prosecution of individual consumer fraud claims." 143 Vt. at 536, 470 A.2d at 1162. As the trial court correctly noted, this legislative intent would be frustrated if the courts were required to measure a fee award against the limited amount of recoverable damages in a consumer fraud claim.

¶ 28. Plaintiffs supported their claim for attorney's fees by presenting the court with itemized billing records and testimony from an experienced litigator that the submitted attorney invoice was "very reasonable" and that plaintiffs' claims were all based upon a common core of facts. The credibility and weight given to the testimony were determinations committed to the trial court's discretion, not ours. *Bruntaeger*, 147 Vt. at 252, 515 A.2d at 126. Where the lower court has awarded attorney's fees based on the lodestar approach, we will not reverse that award absent an abuse of discretion. *LaBrie*, 164 Vt. at 251, 668 A.2d at 669. Despite landlord's argument to the contrary, which she fails to support with any legal authority, the court's failure to reduce the fee award based on the financial hardship to landlord does not constitute an abuse of discretion in this case. Plaintiffs' counsel submitted sufficient evidence upon which the trial court could make its decision. Cf. *Bruntaeger*, 147 Vt. at 254-55, 515 A.2d at 128 (finding the evidence on the reasonableness of attorney's fees insufficient where plaintiff submitted only a bill and did not present any expert testimony). We find no abuse of discretion here.

*Affirmed.*